```
1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
2                            ATLANTA DIVISION

3   UNITED STATES OF AMERICA,        :
                                     :
4   vs.                              :   DOCKET NUMBER
                                     :   1:19-CR-0036
5   HASHER JALLAL TAHEB,             :
                                     :   ATLANTA, GEORGIA
6           DEFENDANT.               :   APRIL 18, 2019

7
```

**TRANSCRIPT OF AUDIO RECORDED PRETRIAL CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE JUSTIN ANAND**

**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES OF COUNSEL:

**FOR THE GOVERNMENT:**

MATTHEW S. CARRICO
UNITED STATES ATTORNEY'S OFFICE

**FOR THE DEFENDANT:**

VIONNETTE REYES JOHNSON
BRIAN MENDELSOHN
FEDERAL DEFENDER PROGRAM, INC.

AKIL K. SECRET
THE SECRET FIRM PC

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:*     *SHANNON R. WELCH, RMR, CRR*
                               *2394 UNITED STATES COURTHOUSE*
                               *75 TED TURNER DRIVE, SOUTHWEST*
                               *ATLANTA, GEORGIA  30303*
                               *(404) 215-1383*

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; April 18, 2019.)**

THE COURT:  This is the case of the United States vs. Hasher Jallal Taheb, 1:19-CR-0036.  Representing the United States is Assistant U.S. Attorney Matthew Carrico.  And here for the defendant is Brian Mendelsohn, Vionnette Johnson, and Akil Secret.  We're here for a pretrial conference.

Are y'all ready to proceed on that here today?

MS. JOHNSON:  Yes.

THE COURT:  All right.  Mr. Carrico, are you -- the printout of the docket I have, which may be old, just has Mr. Buchanan.

MR. CARRICO:  I have not filed a formal appearance. I'm filling in for Mr. Buchanan.  I will file a formal appearance, Your Honor.  Mr. Buchanan is in the Gangster Disciples trial and is going to be tied up through the middle of May.

THE COURT:  Okay.  Understood.

MR. CARRICO:  So to the extent someone from my office needs to appear between now and then, you will be seeing me.

THE COURT:  But are you -- are you just filling in, or are you actually going to be co-counsel at trial on the case?  Because that is -- we do require, you know, counsel handling the case to be present.  It is okay --

MR. CARRICO:  Yeah.

```
 1              THE COURT:  -- if not everyone handling the case is
 2    present.
 3              MR. CARRICO:  I don't know if we will have co-counsel
 4    for the trial.  But to the extent there is co-counsel at the
 5    trial, it will be me.  I will make a formal appearance, and I
 6    will be co-counsel for the case.
 7              THE COURT:  Okay.  All right.  All right.  But are
 8    you otherwise familiar with --
 9              MR. CARRICO:  I am.
10              THE COURT:  -- the case and the discovery and the
11    issues that are raised by the motions?
12              MR. CARRICO:  I have made myself as familiar as I
13    possibly could.  I met with Mr. Buchanan a couple of times.  I
14    have gone through all the motions on the docket.  I should be
15    able to answer most of the Court's questions.
16              THE COURT:  Okay.  Okay.
17              MR. CARRICO:  At least to the extent that
18    Mr. Buchanan would be able to answer them, I think I can answer
19    them.
20              THE COURT:  All right.  Okay.  Fair enough.
21              So we do have a few motions.  I know at least a
22    couple of them deal with discovery.  But let me ask at this
23    point:  What is the status of the Government's discovery
24    production?  Where does it stand at this point?
25              MR. CARRICO:  The status of the Government's
```

1    discovery production is that it is still ongoing.  I produced

2    additional documents to defense counsel this morning.  I handed

3    them three CDs with discovery on it.  The bulk of the

4    additional discovery or the issues with the additional

5    discovery are the recorded conversations among the UCE, CHS,

6    and the defendant.  The FBI is still working through some of

7    the issues with protecting the UCE's and CHS's identity in

8    providing them to the defense.  I hope to have that resolved

9    very soon, Your Honor.  It just has not been resolved yet.

10           THE COURT:  Okay.  So what -- so when you say the

11   bulk -- so -- that would include the recordings themselves have

12   not been produced in full?

13           MR. CARRICO:  So the recordings themselves have not

14   been produced at all at this point, Your Honor.

15           THE COURT:  Okay.

16           MR. CARRICO:  It is likely that we will also have

17   transcripts that will accompany those recordings.  I don't have

18   a definitive answer on that yet.  But I believe that is likely.

19           THE COURT:  How -- how does the recording itself --

20   just the audio presumably recording --

21           MR. CARRICO:  Some of the recordings contain video.

22   Some of them are just audio.  So --

23           THE COURT:  Okay.

24           MR. CARRICO:  -- both you could identify the

25   individuals via voice or if someone were to possibly say

```
 1   something that is identifying, you know, hi, I'm Frank and
 2   accidentally said his real address or something.  I'm just
 3   throwing out a random example.  And then the ones on video
 4   obviously you might see the person's face.
 5            THE COURT:  Right.  Okay.
 6            MR. CARRICO:  And with regard to those, I can
 7   represent to the Court and to the defense counsel that it is
 8   approximately 20 hours' worth of video.  It is not like a
 9   wiretap case where there are thousands of hours and it is going
10   to take forever to go through them.
11            THE COURT:  Okay.
12            MR. CARRICO:  It is a reasonable amount of --
13            THE COURT:  Do you have an anticipated time frame at
14   this point?
15            MR. CARRICO:  I wish I did.  I would like to say
16   that -- I don't.  I don't have a definitive time frame, Your
17   Honor.  I have been on the phone with both the folks in D.C.
18   and here with the FBI locally.  And there's just some things
19   that everyone is trying to work out.  But I'm hoping soon.
20            THE COURT:  Okay.  Let me just pull up my computer so
21   I can get a calendar up.
22            Now, one of the things that I was hoping by signing
23   the protective order that the Government had presented in full
24   without even first hearing any objections was that we would not
25   delay producing things that needed to be produced according to
```

1  the Government in a protected format or in protected

2  circumstances.  So --

3        MR. CARRICO:  That makes sense, Your Honor.  We

4  provided three discs today.  Two of the discs are not sensitive

5  material.  One of the discs is.

6        THE COURT:  Okay.

7        MR. CARRICO:  And, again, I hope to have those other

8  recordings as soon as possible.  The declassification process

9  or the review process or whatever the FBI calls it is just

10  time-consuming.

11        THE COURT:  So this is -- so without having gone

12  through that, you take the position that you don't even want to

13  produce even under the protective procedures of the order to

14  essentially just counsel?

15        MR. CARRICO:  Well, I think --

16        MS. JOHNSON:  You know, Judge, for what it is worth,

17  these persons are known in the Muslim community.  You see E

18  Number 1 has gone to pray at the mosque.  They know who he is.

19  Obviously Mr. Taheb knows who they are.  And we believe that

20  Mr. Hebe (phonetic), FBI undercover, and two other young men

21  had an in-person meeting at some point in time.  So their

22  identities is not a big secret.

23        We have been mindful of the FBI concerns.  We have

24  been mindful and respectful of the Government's concerns.  And

25  that is why we agreed to most of the matters discussed in the

1   protective order.  We want to be able to work with them and

2   address their concerns.

3           But we have been in this case since January.  And so

4   it is -- at this point it is frustrating that this hasn't been

5   done.

6           THE COURT:  Okay.  What else is there other than the

7   recordings that has not yet -- that -- is there other discovery

8   at this point -- Rule 16 discovery?

9           MR. CARRICO:  Will there be additional Rule 16

10  discovery?  Probably.  There will probably be some reports and

11  things of that nature that may be turned over.  What we turned

12  over today included any of the defendant's electronic

13  communications such as text messages, emails, things like that,

14  surveillance photos, his writings, any videos that he made, and

15  then I believe his criminal history.  But if his criminal

16  history didn't make it in there, obviously I will -- I spoke to

17  defense counsel about that.  I will get that to them very

18  shortly.

19          THE COURT:  Okay.

20          MR. CARRICO:  I noticed that in their motion they had

21  asked -- we had provided search warrants that were executed,

22  but apparently we had not provided the returns.  I asked for

23  those returns to be sent to me immediately.  As soon as I get

24  them, I'll pass them on to defense counsel.  I was unaware that

25  the returns hadn't been --

```
1              THE COURT:  What about the proceeds of those

2    searches?  In other words, whatever was obtained from, I

3    believe it was, Instagram, if I'm not mistaken, or other -- the

4    actual material obtained in the searches?  Has that been

5    produced?

6              MR. CARRICO:  I am not positive.  But I can find out,

7    and we can get that.

8              THE COURT:  Okay.  I mean, that's pretty basic;

9    right?

10             MR. CARRICO:  I agree.

11             THE COURT:  Okay.  All right.  Well, I'm going to

12   say -- I'm going to put a deadline, and maybe that will help

13   your issues with the FBI.  I'm going to put a deadline for the

14   Government to finalize -- you know, produce the remaining

15   Rule 16 discovery that it currently has in its possession.

16             MR. CARRICO:  Okay.

17             THE COURT:  And so I'll say 30 days -- let's make

18   that more precise.  Well, it is slightly more than 30 days, but

19   30 days falls on a weekend.  So May 20 would be the first

20   business day after 30 days.

21             So -- and then, Ms. Johnson, several of the motions

22   you filed are sort of placeholder motions because you haven't

23   received all the discovery.

24             MS. JOHNSON:  Correct.

25             THE COURT:  How long would you need to perfect any of
```

1    those motions based on what you receive?

2           MS. JOHNSON:  30 days, Your Honor.

3           THE COURT:  Okay.  That will be fine.  And so, again,

4    just to be precise -- that would be -- June 19 I think would be

5    30 days.  So at this point I'm going to -- I'm going to deny

6    the motion for discovery, which is Number 28, as moot because

7    several things that are discussed in here it sounds like have

8    already been produced.  Other things are to be produced.  And I

9    have ordered the production on the schedule.

10          If there remains issues -- obviously this is without

11   prejudice too.  If there remains deficiencies in the

12   Government's production according to the defense, if there's

13   things that they haven't gotten that you think you're entitled

14   to by -- as of the 19th, then you can bring another motion.

15          But I'm going to deny it as moot at this time because

16   I think it is sort of -- things have been produced or will be

17   produced without dispute that are listed here in this motion.

18   So that's Document Number 28.

19          In terms of the protective order, let's talk about

20   that.  Mr. Carrico, what's your response to the protocol, if

21   you will, that was proposed by the defense to modify the

22   protective order?

23          MR. CARRICO:  So the Government is opposed to that

24   protocol.  Again, our concern regardless of whether the

25   defendant believes he knows who the undercovers are and the

1     CHSs are that the more places that is floating around the more

2     that just becomes publicly available to people.  As I stated to

3     the Court, it is going to be about 20 hours' worth of video.

4              THE COURT:  Is that basically the sum total of the

5     evidence that would be subject to the restriction?

6              MR. CARRICO:  There will be some other stuff.  I

7     guess what my suggestion would be -- would be let us get the

8     remainder of the Rule 16 produced.  Let defense counsel take a

9     look at it.  And if it is a logistical problem for them and

10    they still find the protective order to be unreasonable, we can

11    come back before the Court and we can discuss it.

12             That would be -- I think once they view it I don't

13    think -- I don't think it is going to be necessary to -- I

14    could be wrong.  But I don't know that everyone is going to

15    argue yes, we have to leave this in the jail.

16             But, again, it is not like a wiretap case where

17    there's thousands of hours and there is no way defense counsel

18    can sit with him for that amount of time.  It is 20 hours'

19    worth of recordings.  Like, it is not that long to have

20    somebody sit with him to review it.

21             THE COURT:  Okay.

22             MS. JOHNSON:  Judge, a couple of things.  It is not

23    going to be workable.  You know, if Mr. Secret goes out there

24    to sit, he's $140 an hour.  So that's $2800 that the Court

25    would be paying for basically Mr. Secret to babysit.

1           MR. SECRET:  Babysit.

2           MS. JOHNSON:  Yeah.  It is just not doable.  And we

3    have outlined --

4           THE COURT:  Well, that's doable.  That's just --

5    that's a financial -- I mean, but what about -- I mean, would

6    that always require -- if it is simply -- what you are

7    proposing is that he be able to access that without an attorney

8    present.

9           So could you not -- or I don't know.  Does the

10   protective order contemplate that if you sent an investigator

11   there to -- if it is solely for him to review the material for

12   a few hours on a particular day, that wouldn't necessarily be

13   an attorney function, would it?  Am I right?  You would have

14   investigators you could send to fulfill that function.

15          MS. JOHNSON:  The investigators could do it for a

16   certain amount of time.  But in listening, say, to something

17   that's said on the video, only he would be able to tell us what

18   he meant by that.  And that is really a matter for attorneys to

19   deal with.  It may be argument --

20          THE COURT:  Well, right.  But you're -- but you're

21   contemplating he would be under some significant restrictions

22   able to access this without you or an investigator present at

23   all, just the librarian.

24          MS. JOHNSON:  Correct.

25          THE COURT:  And so you're contemplating that you

1  wouldn't have a lawyer sitting with him the whole time.

2          MS. JOHNSON:  Correct.

3          THE COURT:  So I understand what you are saying, that

4  a lawyer has to be consulting with him about what was meant or

5  what was said or what's the significance of things.

6          But you're proposing -- you're not proposing either

7  that a lawyer be present all the time.

8          MS. JOHNSON:  Well, it is a little bit different

9  because that way he can see it on his own time as opposed -- we

10  can come back and say, okay, what about this, what about that.

11  But that's different than the lawyer having to sit there for

12  the 20 hours.

13          THE COURT:  Right.

14                **(There was a brief pause in the proceedings.)**

15          MS. JOHNSON:  Yeah.  He brings up a good point.  It

16  is the drive.  It is an hour there.  It is an hour back.

17          THE COURT:  Yeah.  I understand.

18          MS. JOHNSON:  And the Government can really not point

19  to anything that would not take care of their concern.  The

20  procedure that we set out in the proposed order is so, so

21  stringent that I don't see what they could point out to and

22  say, oh, no, this is not going to work.

23          MR. SECRET:  And if I might, Judge.

24          THE COURT:  Uh-huh (affirmative).

25          MR. SECRET:  It is used in so many other cases.

```
1    There are so many other cases with sensitive material.  There's

2    the gang cases where the information is left at the jail.  The

3    inmates are given an opportunity to review it on their own

4    time.

5            I'm -- I mean, the -- the way that it is outlined,

6    the only person who is going to have access to the information

7    is Taheb.  He's going to have access to it from us anyway.  I'm

8    confused as to what interest is being protected here.

9            THE COURT:  Uh-huh (affirmative).  What though

10   prevents him, if he has the password, from sharing that -- I

11   mean, I assume we're not going through some step of clearing.

12   I'm going to assume none of this has literally classified level

13   information.  But it is -- assuming that there is sensitivity

14   to the information, what prevents him from sharing that

15   information -- I don't know anything about the librarian or the

16   others that have custody of this.

17           MS. JOHNSON:  Right.  There's two things on that.

18   One is there would be no other inmates around.  And that

19   would -- that is a step that is not normally taken by RAD.  But

20   they are willing to make that accommodation.  The other thing

21   is --

22           THE COURT:  But I mean, their rules -- I'm sorry.  I

23   keep interrupting you.  I don't mean to do that.  But I mean,

24   if it is helpful for you to know my concerns, then you can

25   address that.  I mean, there's already rules and security
```

1    procedures in these jails about not accessing cell phones, not

2    smuggling in contraband.  And we know routinely that that

3    unfortunately is only so -- the faith with those restrictions

4    are followed is only so good as to the -- well, I mean, we know

5    those are not followed.  I'm not talking about RAD

6    specifically.  But unfortunately in so many places.

7              And so the idea that there's -- assuming for the

8    moment -- because I don't really know exactly what's on these

9    tapes -- but that there is highly sensitive law enforcement

10   material on there that could go to identifying CIs that are not

11   otherwise identifiable that were undercover officers and that

12   is in the physical custody of jail employees and the defendant

13   has password access, the notion that that is not getting shared

14   relies on believing that those folks are completely following

15   those rules, which unfortunately we have seen enough to know

16   that in a lot of jail settings rules of that sort are not

17   followed.  I mean, I think that is part of the Government's

18   concern.  I have to say I share it.

19             If assuming -- because I don't know -- this is highly

20   sensitive law enforcement information, it being there and

21   allowed to stay there outside the custody of any -- of you or

22   them or the Court raises some concerns I have to say.

23             MS. JOHNSON:  There's a couple of things.  One is I

24   know we're reading the news about cell phones in the

25   facilities.  As far as I'm aware -- and the prosecutor can

1   correct me if I'm wrong -- there have been no issues of that

2   with RAD.  RAD is a facility that is contracted with -- the

3   U.S. Marshals contract them.  They have certain procedures.

4   They have certain rules.  And we have not had that problem at

5   RAD.  That is the first thing.

6           The second thing is the protective order sets out an

7   acknowledgment for the person receiving the discovery to sign.

8   And we're not proposing that that be changed.  So Ms. Ricard

9   would be signing that acknowledgment agreeing to abide by the

10  terms of the protective order and also agreeing to be under the

11  jurisdiction of this Court were she to violate the order.

12          THE COURT:  Uh-huh (affirmative).

13          MS. JOHNSON:  So I think that takes care of the

14  judge's -- of Your Honor's concerns.

15          THE COURT:  Okay.  Well, I'm going to deny the motion

16  at this point.  I think there's some logic to the notion of why

17  don't y'all get the material and see with a little more

18  concreteness and a little more ability to know how much time

19  you're going to need or he's going to need to review.  I do

20  think there is a difference between 20 hours -- and I don't

21  know how much of the 20 hours is really material.  And no one

22  can really know that until you go through it.  You know, 20

23  hours of surveillance could be -- or interactions it could be

24  only a handful of that is really material.  I mean, some of it

25  could be just driving in a car.  I don't know.

1          I think it makes sense to wait and see and for y'all

2    to come back with a little bit more particularized showing of

3    why it is that it is overly burdensome or impractical to have

4    an investigator and/or attorneys be with the defendant as he --

5    and then take the material away as he reviews it if it really

6    is only 20 hours.

7          So I'm going to deny it at this point but without

8    prejudice with the idea that once you get the stuff you'll have

9    a much better ability to articulate why it is that the

10   protective order procedures are unduly burdensome.

11         I do think -- I do have some concerns as I've just

12   articulated with simply assuming that material left in the

13   custody of the jail employees and with the defendant having

14   password access would be sufficiently protected to the extent

15   this truly is highly sensitive material.

16         And I say that with respect to the folks at RAD.  I

17   agree with you.  I don't know that there's an issue

18   historically.  But unfortunately we've seen enough in other

19   places that I can't be blind to the risk that -- that not every

20   individual at every one of these institutions can always be

21   trusted with the most highly sensitive information.  And

22   federal facilities, while not RAD specifically perhaps

23   historically, are not immune from that as we have seen in a lot

24   of cases.

25         So I'm going to deny the motion but without prejudice

1    to be reraised once you get the material and have a better idea

2    of what is on there, how much is really material, and what your

3    needs really are going to be and what his needs are going to

4    be.

5              MS. JOHNSON:  Judge, I have one question.

6              THE COURT:  Uh-huh (affirmative).

7              MS. JOHNSON:  And this is for when we come back, if

8    we come back.  The Court appears to be concerned about

9    Mr. Taheb having the password.  Would it make a difference to

10   the Court if it is Ms. Ricard that has the password and that

11   Mr. Taheb doesn't have it?

12             THE COURT:  Well, I don't think so because for the

13   reasons I said before I don't really know anything about her

14   or -- you know, I'm hesitant because I don't mean to say this

15   with any insult to her.  I don't know her negatively or

16   positively.

17             But it is the concern generally that highly sensitive

18   law enforcement information that we're allowing shared to folks

19   who -- I don't -- I gather are not cleared specifically.  I say

20   that.  I don't mean literally cleared because I assume this is

21   not classified.  But still at least small C cleared that are

22   appropriate to have access to the information.  So whether it

23   is leaving it in the custody of jail employees or the defendant

24   or both, I think -- I share the Government's concern.

25             But, again, this is without prejudice to balancing it

1    against a more particularized showing of need, which I just

2    think awaits getting the information and being able to know a

3    little bit more.  Because there is a difference -- I think

4    Mr. Carrico is correct -- if the traditional -- what we often

5    see with regard to wiretaps, a thousand-plus hours versus

6    simply 20 hours.  And I just can only assume that of those 20

7    hours only a portion is really important.

8           But I don't know.  That's partly -- because I haven't

9    seen it nor have you.  So I think that's part of the analysis

10   that needs to await actual receipt of and analysis of the

11   information.  And in the end, it is not on its face obviously

12   impractical to have 20 hours' worth of tape provided to the

13   defendant in the custody of the defense or to defense

14   employees.

15          Again, I'm assuming that at least part of this can be

16   done with investigator work as opposed to attorney work, which

17   would actually be a greater level of interaction than what

18   you're anticipating, which is the ability for him to just look

19   at it on his own without anyone.  So on its face, 20 hours is

20   not impractical in that regard.  So I'm going to deny it

21   without prejudice.

22          MS. JOHNSON:  And, Judge, one other thing that I want

23   to address as it relates to our motion to modify the protective

24   order.

25          THE COURT:  Uh-huh (affirmative).

1          MS. JOHNSON:  And it is set out in Pages 6 and 7 of

2    my motion.  And it deals with the defense having to basically

3    guess whether some materials are subject to the protective

4    order without them being marked as such.  And so on Page 7, I

5    have some suggested language asking that the Government label

6    as sensitive information subject to protective order, which is

7    the language that they suggested, materials that involve the

8    CHS and/or UCEs.

9          THE COURT:  Bear with me for one second.  I wanted to

10   pull up the actual order, what it says.  They migrated us to

11   this Next Gen PACER system, which means there's two more

12   buttons I have to press.  And that's enough to scuttle it for

13   my practical purposes.

14         So what paragraph is the -- it is Paragraph 5 and 5C?

15         MS. JOHNSON:  Yes.  And you'll see -- I explain it in

16   Pages 6 and 7 of my motion.

17         THE COURT:  Right.  Right.  No.  I saw that.  I just

18   wanted to remind myself what it says originally here.

19         MS. JOHNSON:  Well, if it is any consolation, I can't

20   get my hands on the order.

21         THE COURT:  Mr. Carrico, what's your -- what's your

22   position on that?

23         MR. CARRICO:  I think my position on that, Your

24   Honor, is that the way the order is drafted is sort of a belt

25   and suspenders, if you will, Your Honor, both that the

1    Government will endeavor to label any such information as

2    sensitive information subject to a protective order.  But if

3    for some reason something were to slip through that we hadn't

4    labeled, that doesn't mean it is a free-for-all and that can be

5    posted on the internet or anywhere else.  That is the way --

6    the reason it was drafted in that manner, Your Honor.

7            MS. JOHNSON:  And, Judge, I have been doing this

8    almost 30 years.  I have never followed some free-for-all

9    conduct where I post discovery on the internet.

10           MR. CARRICO:  Oh, no.  I didn't mean to --

11           MS. JOHNSON:  I mean, this is really farfetched.

12           MR. CARRICO:  I didn't mean to imply that defense

13   counsel would do that.  I just think that's why it is drafted

14   that way.  It is just drafted so that if for some reason

15   someone misses a label and doesn't say that this particular

16   piece of information that shows either the undercover or the

17   confidential human source's identity, if we have mislabeled it,

18   that doesn't mean that it can be passed around not subject to

19   the protective order.

20           Everyone in the case, both on the prosecution and the

21   defense side, are professionals.  They are all very smart

22   people.  They all can look at the information and say, oh, that

23   deals with that.  It is subject to the protective order.

24           Again, the Government is going to label such

25   information as sensitive subject to the protective order.  And

1    we're not going to try and miss anything.  But on the outside

2    chance that we do, the protective order still --

3           THE COURT:  But then if you -- let's say on the

4    outside chance that you miss such a designation, how is it that

5    they would then be on notice for purposes of this restriction

6    that that person --

7           MR. CARRICO:  If they missed it also, then everybody

8    just made a mistake, Your Honor.  But there's -- right.  I

9    mean, that's just the fact of the matter.  But the point is:

10   If it is a piece of paper, let's say, that says the

11   confidential human source's name is Fred and he lives at 123

12   Smith Street and it is right on the front and somehow that got

13   attached to something that it wasn't supposed to be attached

14   to, I mean, it is plain to everyone that it is there and it

15   shouldn't have been turned over.

16          If their response is we didn't know -- we didn't open

17   the disc, you didn't label the disc as sensitive information so

18   we gave the disc to the defendant to look at, well, then the

19   Government has egg on its face.  We should pull that back, and

20   it is a problem.  But I mean, I don't think the order as

21   drafted is overly burdensome.  It just is --

22          THE COURT:  So what I think part of what

23   Ms. Johnson's concern is does this create a review burden on

24   them to first -- you're going to give them a bunch of material

25   that is not going to be marked as restricted.  Some is.  Some

```
1    isn't.  And they are assuming they are going to be within the

2    rights to share the unrestricted with the defendant in the way

3    that -- without restrictions.

4              MR. CARRICO:  Sure.

5              THE COURT:  And if something is in there then that

6    triggers this, then there -- there is an issue.  And are they

7    then having to worry about litigating whether or not they

8    violated this?  Are they under some pre- -- you know, due

9    diligence review obligation to make sure that what they are

10   sharing with their client or experts or whoever that may

11   otherwise not be permitted under the protective order to review

12   all this to make sure that your restrictions were complete --

13   that your designations were fully accurate?

14             MR. CARRICO:  Understood.  I don't think that was the

15   intent of it.  I think the intent is if we mislabel something

16   and you become aware of it, you still know that it is subject

17   to the protective order and you shouldn't turn it over.

18             THE COURT:  So it is sort of an actual knowledge --

19             MR. CARRICO:  Yeah.

20             THE COURT:  -- standard as opposed to a negligence or

21   recklessness --

22             MR. CARRICO:  I mean, obviously if we're negligent

23   and someone else also doesn't notice it, we can't say, well, we

24   were negligent but we're going to hold you to a higher

25   standard.  That doesn't -- that isn't the goal.  But the goal
```

1    is to say that the information, whether we mess up the label or

2    not, is subject to the protective order.  So --

3              THE COURT:  Okay.

4              MR. CARRICO:  If you come across it, be aware of

5    that.  That's, you know --

6              THE COURT:  So I guess, Ms. Johnson, if this were

7    amended to make clear that it is an actual knowledge scienter,

8    if you will, requirement and not mere negligence or

9    recklessness --

10             MS. JOHNSON:  I would like to look at the proposed

11   language if the Court wants to go that route so that I can be

12   sure that it is something we're comfortable with.

13             But I do have two things that I would like to put on

14   the record.  One is there has been some discussion about

15   confidential informants that no one may know who they are at

16   this point in time.  And it is sort of -- my thinking is beauty

17   is in the eye of the beholder.

18             THE COURT:  Uh-huh (affirmative).

19             MS. JOHNSON:  The Government may consider them

20   confidential informants.  I have no way of knowing that.  So

21   that is my first concern.

22             The second is we're officers of the Court.  We are

23   under an obligation to be forthright with the Government and

24   with the Court.  And if for some reason they were to produce

25   some materials that were -- were not marked that are subject --

1    that are sensitive materials our obligation would be to contact

2    them and say, hey, you inadvertently probably produced this to

3    us without marking it.  That is an ethical obligation that we

4    have.  And we should not be held accountable for their mistakes

5    if we don't know that they have made a mistake.  And the way I

6    read the language it is putting the burden on us to determine

7    whether it is sensitive or not.

8              THE COURT:  Well, I'm sensitive to that concern.  I'm

9    also sensitive to the notion the Government is trying to

10   protect against inadvertent or mistaken disclosures or

11   inadvertent failures to identify something, which can happen.

12             One problem as a practical matter I think with --

13   Ms. Johnson, with y'all's proposal is I'm concerned the

14   reaction as a protective matter would be to overdesignate.  If

15   everything has to be designated, I'm concerned the reaction

16   would be to simply overdesignate, which could have other

17   problems and implications for the -- how this case would

18   proceed.

19             I think it is reasonable to say that if those who are

20   subject to the protective order become actually aware of there

21   being an identification of a confidential human source or

22   undercover officer that was not -- an actual identification of

23   such a person that was not marked in the appropriate way then

24   that should be raised or identified, much like many protective

25   orders in civil cases now deal with the way inadvertently

1  produced privileged information is handled.  And -- but it

2  being understood and I think could be redrafted to make clear

3  that this is a fairly strict standard of actual knowledge that

4  you're -- it has to be something that you are actually aware

5  of, that Mr. Carrico's hypothetical of the actual memo that

6  says confidential human source, John Smith.  That I'm not

7  saying is the exclusive scenario.  But that would be a clear

8  instance where it says on its face, and you would have actual

9  knowledge of something being not properly restricted.

10         I think it is hard to say that that wouldn't be a

11  fair scenario.  And I think -- I completely believe Ms. Johnson

12  that you would then pick up the call -- phone and tell

13  Mr. Carrico regardless of what the words are in here.  But I

14  think it is reasonable for the Government in part because not

15  everyone who is subject to the protective order is within this

16  room.  There may be -- certainly the defendant personally.  But

17  also there could be experts or others who information is shared

18  with pursuant to or subject to the terms of the protective

19  order.

20         And I think it is a logical thing.  I'm sympathetic

21  to that risk.  And in civil cases, in the analogous situation

22  of inadvertently produced privileged information, it is

23  somewhat common now to have those sort of clawback-type

24  provisions.

25         So I think that I'm going to deny the request as put.

1   It may be that y'all can work out some other remedy or

2   amendment to this language because I do think, sensitive to the

3   issues that Ms. Johnson has raised, it should be made clear

4   that this is limited to an actual knowledge standard.  And I'm

5   not sure that that is in here under the language as it

6   currently exists.

7        I do agree it shouldn't just be sort of strict

8   liability that -- or where the burden is on the defense to

9   review materials to make sure in a due diligence capacity that

10  there isn't a problem.  That is not the standard.  And I do

11  think that -- or I'm sympathetic to the idea that that is not

12  what this language currently has in the agreement.  Although I

13  do think the language proposed by the defense I'm going to deny

14  as well.

15       So I'll deny the motion but with the idea that y'all

16  maybe can work out a further amendment to this.  And if not,

17  then I can hear another motion for -- to amend that paragraph.

18       Does that make sense?

19       MS. JOHNSON:  Yeah.

20       THE COURT:  Okay.  All right.  So we have the two

21  preliminary motions that are the sort of boilerplate motions to

22  suppress, which I'll just hold in abeyance.  And that is what

23  we will assume will be perfected, along with any other motions

24  that become evident upon receipt of the additional information.

25  And that's what will be due by June 19.

 1            Let me set another date for a pretrial conference --

 2   a further pretrial conference.  How are y'all on the following

 3   week, June 26?

 4            MR. SECRET:  I'm on leave during that period of time.

 5            THE COURT:  Okay.

 6            MR. SECRET:  I think I come back after the 4th of

 7   July.

 8            THE COURT:  Okay.  I'm on duty the weeks of July 8th

 9   and 15th.  I sometimes --

10            MS. JOHNSON:  Judge, if you want to set it the week

11   of July 22nd and give us, like, maybe two more weeks to file

12   motions, that may take care of us having to ask for additional

13   time.

14            THE COURT:  Right.  Well, what I would rather do

15   is -- I mean, 30 days is a fair amount of time, and I'm hopeful

16   that would be enough.  If you need more, then we can talk about

17   that.  But I was hoping not to set off the pretrial conference

18   that far.

19            Why don't I set it for the 10th, which is a Wednesday

20   if y'all are free.  And I am on duty.  So I may not have

21   unlimited time.  But we've already gone over some matters here

22   now, and we'll just really use this time to discuss any motions

23   that are filed and what to do with those motions.  So it will

24   be a more limited pretrial conference hopefully.

25            Are y'all free on the 10th?

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1              MR. MENDELSOHN:  Well, I'm on trial that week.  But
2      if everybody else is here, I guess they can handle it.
3              THE COURT:  Is that -- are you comfortable -- is
4      that --
5              MS. JOHNSON:  Okay.  Then I think July 10 will work.
6              THE COURT:  And I mean Mr. Buchanan I assume will be
7      available by then as well?
8              MR. CARRICO:  If he's not, I will, Your Honor.
9              THE COURT:  Okay.  So let's say 9:30 on July 10.
10             Otherwise any experts the Government anticipates?
11             MR. CARRICO:  No, not at this time, Your Honor.
12             THE COURT:  Okay.  Well, technically expert
13     disclosures are a component of Rule 16.  And Rule 16 is
14     technically due at arraignment.  So I think that is
15     something -- if there are going to be Government experts at
16     least based on matters that are currently known that has to be
17     disclosed at the next hearing, then I'll ask you -- I'll
18     probably assume that you'll know the answer to that by July 10.
19     Are there going to be Government experts?  And if so, then we
20     can set a date at that time for disclosures, if they haven't
21     already been made.
22             But I will at least ask you to have that deadline to
23     disclose whether the Government -- whether there will be
24     Government experts in the case by July 10.
25             I assume reciprocal discovery has been requested?
```

1          MR. CARRICO:  Yes, Your Honor.

2          THE COURT:  So I guess any defense experts that y'all

3    anticipate at this point?

4          MS. JOHNSON:  No.  We have no idea what they would be

5    bringing forward.  So no.

6          THE COURT:  Right.  Okay.  Fair enough.  Although I

7    probably will then ask at the next pretrial conference the same

8    question, at which point you may have more of an idea at that

9    point.

10          Any Rule 404(b) the Government knows about and

11    anticipates using at this time?

12          MR. CARRICO:  Not at this time, Your Honor.

13          THE COURT:  Okay.  Anything else then for today?

14          MS. JOHNSON:  No, Your Honor.

15          THE COURT:  All right.  Very good.  Well, thanks very

16    much.  And we'll be in adjournment, and we'll see y'all when it

17    is much warmer.

18          MS. JOHNSON:  Thank you.

19                    **(The audio recorded proceedings were thereby**

20                    **concluded at 10:53 A.M.)**

21

22

23

24

25

                      C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA


     I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of
the United States District Court, for the Northern District of
Georgia, Atlanta Division, do hereby certify that the foregoing
29 pages constitute a true transcript of the audio recorded
proceedings had before the said Court, held in the City of
Atlanta, Georgia, in the matter therein stated.

     In testimony whereof, I hereunto set my hand on this, the
24th day of May, 2019.




                         _____
                         SHANNON R. WELCH, RMR, CRR
                         OFFICIAL COURT REPORTER
                         UNITED STATES DISTRICT COURT