IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>HASHER JALLAL TAHEB | Criminal Action No.<br><br>1:19-CR-36-MHC-JSA |

**The United States' Sentencing Memorandum**

The United States of America, by Byung J. Pak, United States Attorney, and Ryan K. Buchanan, Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum regarding the application of terrorism sentencing enhancement under the U.S. Sentencing Guidelines § 3A1.4.

**I.  PROCEDURAL HISTORY**

On January 16, 2019, Hasher Jallal Taheb (the "Defendant") was charged by criminal complaint with one count of violating 18 U.S.C. § 844(f)(1).  (*See* doc. 1). On January 23, 2019, a federal grand jury returned an indictment charging the Defendant:

Beginning on a date unknown to the Grand Jury, but at least by, in or about December 2018, and continuing until on or about January 18, 2019, in the Northern District of Georgia, the defendant, Hasher Jallal Taheb, did knowingly attempt to damage and destroy, by means of fire and an explosive, a building and real property in whole and in part owned and possessed by, and leased to; the United States and a department and agency thereof, and an institution and

organization receiving Federal financial assistance, in violation of Title 18, United States Code, Section 844(f)(1).

On April 1, 2020, the Defendant entered a written binding guilty plea to the indictment pursuant to Rule 11(c)(1)(C) and the Court preliminarily accepted the Defendant's plea.  The Defendant is scheduled to be sentenced on July 23, 2020.

## II. SUMMARY OF DEFENDANT'S CRIMINAL CONDUCT

In March 2018, a member of a local law enforcement agency contacted the FBI and reported that a community member had relayed concerns that Taheb had become radicalized and made plans to travel abroad.

In August of 2018, Taheb advertised his vehicle for sale, and an FBI Confidential Human Source ("CHS #1") said he was interested in purchasing Taheb's vehicle.  The following month, Taheb met an FBI Undercover Employee (UCE #1) for the same reason.

In October 2018, Taheb met with CHS #1 in Cumming, Georgia and told CHS #1 that he (Taheb) planned to travel overseas and planned to sell his car to fund his travel.  However, Taheb had misplaced his passport and therefore could not travel abroad.  Accordingly, Taheb told CHS #1 that Taheb wished to conduct an attack in the United States against targets such as the White House and the Statue of Liberty.  Taheb told CHS #1 that jihad was the best deed in Islam and the peak of Islam.  Taheb further stated that it was not complicated at all to do jihad today.

On or about December 2, 2018, Taheb arranged a meeting with CHS #1 and UCE #1.  During the meeting, Taheb advised that if they were to go to another

2

country, they would be one of many, but if they stayed in the United States, they could do more damage. Taheb explained that jihad was an obligation, that he wanted to do as much damage as possible, and that he expected to be a "martyr," meaning that he expected to die during the attack.

On or about December 7, 2018, Taheb met UCE #1 in Alpharetta, Georgia. Taheb showed UCE #1 a hand-drawn diagram in a composition book of the ground floor of the West Wing of the White House in Washington, D.C. Taheb referenced his drawing and described his plan for attacking the West Wing of the White House. Taheb and UCE #1 discussed the types of weapons and explosives that Taheb wanted to use to conduct the attack and Taheb tasked UCE#1 with obtaining weapons and explosives needed to conduct the attack. They also discussed selling or exchanging their vehicles for weapons and explosives. Taheb added, "at this point, since it is the three of us, it would be considered a martyrdom operation."

On or about December 14, 2018, UCE #1 met with Taheb in Cumming, Georgia. Taheb broadened his prospective targets in the Washington, D.C. area and indicated he wished to attack the Washington Monument, the White House, the Lincoln Memorial, and a specific synagogue. Taheb again brought hand-drawn sketches of the White House and outlined the types of weapons he wished to use in the attacks, including semi-automatic weapons, improvised explosive devices, an AT-4, and hand grenades. Taheb discussed the need for a base with UCE #1 and explained that he wanted to use the base to record a video that would motivate people. Taheb would be the narrator of the video, clips of

oppressed Muslims would be shown, and American and Israeli flags would be burned in the background.  Taheb stated that he created a channel on a video-sharing website to post the video before the actual attack happened.

On or about December 14, 2018, Taheb, using an encrypted social media messaging application, sent UCE #1 a link to a document on Google Docs.  The 40-page document, which UCE #1 downloaded, was authored by Taheb, titled, in part, "Ghurabah", and extolled the importance of jihad, specifically "defensive jihad," which Taheb noted was his justification for creating and leading his group to conduct violent attacks.

On or about December 15, 2018, Taheb created a group chat on an encrypted social media messaging platform and added UCE #1 and CHS #1 to the group.  On or about December 17, 2018, Taheb sent the group a link to a lecture by Anwar al-Awlaki, who was an Islamic lecturer and a leader of Al-Qaeda.

On or about December 19, 2018, UCE #1, using the encrypted social media messaging application provided the pricing for the weapons and explosives in which Taheb had expressed interest.  On or about January 6, 2019, Taheb sent UCE #1 a coded list of explosive items he wanted for the attack, discussed the logistics of picking up the items, and the need for backpacks in which to put the items.  On or about January 7, 2019, when asked by UCE #1 about the sequence of events, Taheb, stated that the plan was to pick up the explosives and go straight to the road trip.  Taheb added, "We can go sightseeing and then the main event on Thursday."

On or about January 9, 2019, Taheb met with UCE #1 and provided UCE #1 with two backpacks.  Taheb again discussed his attack plan against the White House, including martyrdom.  Taheb stated that he wanted to obtain the weapons on or about January 15, 2019, travel to Washington, D.C., and conduct the attack on or about January 17, 2019. Taheb again provided details of his plan to attack the White House, describing how he intended to use the AT-4 to blow a hole in the White House so the group could enter. Taheb explained that his plan was to enter the white house and to kill as many people as possible until they could no longer proceed.

On or about January 9, 2019, UCE #1 asked Taheb if he was still planning to exchange his car for the weapons and explosives, and Taheb responded affirmatively.  Taheb advised that he wanted to go over the attack plan with the group and ensure that they did not have any doubt in their hearts.

On or about January 12, 2019, Taheb met with CHS #1 in Cumming, Georgia. Taheb provided details to CHS #1 about Taheb's plan to attack the White House. Taheb stated he wanted to conduct the attack on the upcoming Thursday (January 17, 2019), using firearms, an AT-4, and backpacks with explosives. Taheb explained to CHS #1 that each person would have a backpack with C4 equipped with a button to detonate the device.  Taheb explained that the group would attack the White House by approaching from the back road, causing a distraction for police, and then proceeding into the White House.  According to Taheb, the AT-4 would be used to open a door and move in.  Taheb said he planned to get as many people as possible and do the most damage. Taheb

5

specifically noted the areas where the Secret Service and Homeland Security operated in the White House. In addition to verbally explaining his plan to CHS #1, Taheb also opened a composition notebook that he brought to the meeting and showed CHS #1 the hand-drawn sketches Taheb had made of the attack plan.  Id.  The sketches included floor plans of the White House, with the Secret Service and Homeland Security areas notated with stars on his drawings.

On or about January 16, 2019, Taheb, CHS #1, and UCE #1 met in the parking lot of a store in Buford, Georgia for the purpose of exchanging their vehicles for three semi-automatic assault rifles, three explosive devices with remote initiation, and one AT-4.  Taheb the met with a second FBI Undercover Employee (UCE #2) to inspect and discuss firearms and how to arm and detonate the explosive devices. Taheb also handled the AT-4 and discussed how to use it. Taheb then gave his car keys in exchange for the weapons and explosives.  Taheb then took possession of two backpacks containing the inert explosives, the inert AT-4 and placed them in the rental vehicle. Taheb then entered the front passenger door and closed it.  Agents then placed Taheb under arrest.

### III.  APPLICATION OF THE TERRORISM SENTENCING ENHANCEMENT

The offense to which the Defendant pled guilty, the relevant conduct as described in this memorandum, and the evidence that will be presented at the sentencing hearing involved, or were intended to promote, a federal crime of terrorism.  Accordingly, the federal terrorism sentencing enhancement under the U.S. Sentencing Guidelines § 3A1.4 applies.  With this enhancement, the offense

level is increased by 12 levels or to level 32 (whichever is higher), and the defendant's criminal history category becomes a Category VI.

"Federal crime of terrorism" is defined at U.S.S.G. § 3A1.4, app. note 1 and 18 U.S.C. § 2332b(g)(5). According to this definition, a "federal crime of terrorism" has two components. First, it must be a violation of one of several enumerated statutes. 18 U.S.C. § 2332b(g)(5)(B). Second, it must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). By § 3A1.4's plain wording, there is no requirement that the defendant have committed a federal crime of terrorism. All that is required is that the crimes of conviction, or relevant conduct, involved or were intended to promote a federal crime of terrorism. *See, e.g.*, *United States v. Mandhai*, 375 F.3d 1243, 1248 (11th Cir. 2004) ("In ordinary usage, to 'promote' means 'to bring or help to bring ... into being....' Under a plain reading, the phrase 'intended to promote' means that if a goal or purpose was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B), the terrorism enhancement applies.") (finding the enhancement applies to a charge of 844(n) when the object of the conspiracy is 844(i)); *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001) ("A defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime; instead the phrase implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism. On this reading, the offense of conviction itself need not be a 'Federal crime of terrorism.'"); *United States v.*

7

*Stewart*, 590 F.3d 93, 137 (2d Cir. 2009) ("The criminal conduct at issue need not itself meet the statutory definition of a federal crime of terrorism if 'a goal or purpose [of the defendant's act] was to bring or help bring into being a crime listed in 18 U.S.C. 2332b(g)(5)(B).'").

To apply the enhancement, the Court needs to identify which specific enumerated federal crime of terrorism the defendant intended to promote, and the Court's findings need to be supported by only a preponderance of the evidence. *See United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). A district court deciding whether to impose the terrorism enhancement must "resolve any factual disputes" relevant to the enhancement and then, if it finds the requisite intent, should "identify the evidence in the record that supports" that finding. *United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) (quoting *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008)).

As the Eleventh Circuit has explained, "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248. By plotting to attack the White House with explosives, AT-4, grenades, and other weapons, the Defendant intended to promote an enumerated crime of terrorism, namely 18 U.S.C. § 844(f)(2) and/or 18 U.S.C. § 844(3). As the Defendant made clear, the Defendant's goal in acquiring numerous weapons and explosives to attack the White House was to "do as much damage as possible," to become a

"martyr," to fight to the end and make a big bang, to enter the White House and take down as many people as possible, and to get into the White House until it was cleared, to blow open a door to the White House and get as many people as possible and do the most damage.

 Moreover, it is clear that the Defendant's intention was "to influence or affect government conduct" and to retaliate against the government's actions.  In the video recovered after his arrest, Defendant detailed his grievances against the United States, including its military involvement in particular countries.  The Defendant also outlined his beliefs on how the United States has treated Muslims and blamed the American people for its failed leadership. Defendant also made demands for the safety of Americans and stated that Americans would not see peace until troops were withdrawn.

**Conclusion**

For the reasons set forth above, the United States requests that the Court sentence Defendant to 180 months of custody.

Respectfully submitted,

BYUNG J. PAK
   *United States Attorney*


/s/RYAN K. BUCHANAN
   *Assistant United States Attorney*
Georgia Bar No. 623388
Ryan.Buchanan@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Vionnette R. Johnson

July 22, 2020

/s/ RYAN K. BUCHANAN

RYAN K. BUCHANAN

*Assistant United States Attorney*