```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF GEORGIA
 2                              ATLANTA DIVISION

 3

 4

 5   United States of America,

 6        vs.                                    Docket No.
                                        1:19-cr-00036-MHC-JSA-1
 7   Hasher Jallal Taheb,

 8                  Defendant.

 9

10

11

12

13                 TRANSCRIPT OF SENTENCING HEARING
                   BEFORE THE HONORABLE MARK H. COHEN
14                 UNITED STATES DISTRICT COURT JUDGE
                        THURSDAY, JULY 23, 2020

15

16

17   Appearance of Counsel:

18   For the Plaintiff:        Ryan Karim Buchanan, Esq.
                               Assistant United States Attorney
19

20   For the Defendant:        Hasher Jallal Taheb, Esq.

21

22                             Judith M. Wolff, CRR
                               Official Court Reporter
23                             1914 United States Courthouse
                               75 Ted Turner Drive, S.W.
24                             Atlanta, Georgia  30303
                               judith_wolff@gand.uscourts.gov
25
```

STENOGRAPHICALLY REPORTED, COMPUTER-AIDED TRANSCRIPT

1      (Court was called to order at 2:04 p.m.)

2           THE COURT:  Please be seated.

3           This is the case of United States of America vs.

4    Hasher Jallal Taheb, Criminal Indictment No. 19-cr-36.

5           Will the parties please identify themselves for the

6    record.

7           MR. BUCHANAN:  Good afternoon, your Honor.  Ryan

8    Buchanan, on behalf of the United States.

9           I'm joined at counsel table by FBI special agents

10   Benni Johnson and Kristen Paulling.

11          THE COURT:  Good afternoon, Mr. Buchanan.

12          MS. JOHNSON:  Good afternoon, your Honor.  Vionnette

13   Johnson here as stand-by counsel for Mr. Taheb.

14          THE COURT:  All right.  And Mr. Taheb, you are also

15   present, is that correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Let me first indicate, Mr. Taheb, that

18   the last time we saw each other was for your plea hearing, as

19   you remember.  You indicated at that time that you wanted to

20   represent yourself and that I still allowed Ms. Johnson to be

21   stand-by counsel for you in order to provide you with any

22   necessary assistance in this matter.

23          Is it your intent to represent yourself at today's

24   sentencing hearing?

25          THE DEFENDANT:  She will be my stand-by counsel.

1          THE COURT:  And she will still be your stand-by

2   counsel.  All right, that's fine.

3          This is a sentencing hearing following the

4   defendant's plea of guilty to the criminal indictment charging

5   him with the offense of attempt of destruction of government

6   property by fire or explosive, in violation of 18 United

7   States Code Section 844(f)(1).

8          At the defendant's plea hearing on April 1, of 2020,

9   given the binding plea agreement in this case, the Court

10  ordered that the defendant's plea of guilty be entered, and

11  deferred it's adjudication until it received the presentence

12  report and held this hearing.

13         Now that the presentence report has been received and

14  viewed by the Court, this Court now adjudges the defendant

15  guilty of the criminal indictment.

16         It in accordance with Rule 32 of the Federal Rules of

17  Criminal Procedure, the United States Probation office has

18  conducted a presentence investigation and prepared a

19  presentence report, a copy of which has been provided to both

20  the government and the defendant.

21         Mr. Taheb, have you had an opportunity to review the

22  presentence report?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  Have you had an opportunity

25  to discuss the presentence report with your stand-by counsel?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  I do note that it's my

3  understanding that Ms. Johnson, your stand-by counsel, did

4  prepare a sentencing memorandum for the Court's consideration,

5  but I'm not sure whether you agreed to have that memorandum

6  presented.

7          Did you want it presented, or not?

8          THE DEFENDANT:  No.  Withdraw on that.

9          THE COURT:  Okay.  So you directed her not to present

10 it, correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  All right.

13         Once again, I'm just going to tell you, Mr. Taheb, as

14 I told you during the plea hearing, Ms. Johnson is an

15 excellent attorney.  She's been through I don't know how many

16 different sentencing hearings before me before and I know

17 before this Court before.

18         She can help you, but it's your decision, obviously,

19 as to whether and how much you want her to help you.  So if at

20 any time during this hearing you change your mind and you want

21 her to present that memorandum, just let me know and I will

22 consider it.

23         THE DEFENDANT:  Okay.

24         THE COURT:  All right.

25         It appears from the record that there are no

1  objections to the findings of fact and conclusions of law in

2  the presentence report by the government, is that correct,

3  Mr. Buchanan?

4          MR. BUCHANAN:  That's correct, your Honor.

5          THE COURT:  All right.  And Mr. Taheb, with respect

6  to your position, Ms. Johnson did make some objections to the

7  presentence report when it was submitted.

8          And the main objection, which applies to paragraphs 3

9  of the report, and paragraph 37, and paragraph 48 deals with

10  the increase to the base offense level.  The presentence

11  report applies a 12-level increase to the base offense level

12  under Section 3A1.4(a) of the sentencing guidelines because

13  the offense was a felony that involved or was intended to

14  promote a federal crime of terrorism.

15          The objection that was raised by Ms. Johnson on your

16  behalf is that the crime for which you were charged with and

17  pled guilty to, which is attempt of destruction of government

18  property by fire or explosive, which is 18 United States Code

19  Section 844(f)(1), is not included in the definition of

20  federal crime of terrorism under another code section, which

21  is 18 United States Code Section 2332b(G)(5).

22          Do you still want to discuss that objection, do you

23  maintain that objection?  What is your position on that?

24          THE DEFENDANT:  We can move forward.

25          THE COURT:  Okay.  Move forward.  On the objection.

1  Okay.  All right.

2          I'll ask -- do you have anything to say about -- I'm

3  going to ask Ms. Johnson to also add anything that she hasn't

4  said already about it, but do you have anything you want to

5  say about it?

6          THE DEFENDANT:  That I do not object to the

7  enhancement.

8          THE COURT:  Oh, you do not object to the enhancement.

9  All right.  So if it was up to you, you would withdraw the

10 objection?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Ms. Johnson, do you want to

13 be heard on that?

14         MS. JOHNSON:  No.  Only to say that I have to follow

15 the guidelines as stand-by counsel.

16         THE COURT:  Okay.  Very good.  All right.

17         Do you have anything else you want to say,

18 Mr. Buchanan?  I don't want to cut you short, either.

19         MR. BUCHANAN:  Your Honor, I prepared our legal

20 argument in support of that objection within the government's

21 sentencing memorandum.  And we agree with the calculation that

22 the probation office has made.

23         I do have a six-minute video for some factual support

24 that I would like to admit as Government's Exhibit 1, to play

25 for the Court.

Sentencing Hearing                    Thursday, July 23, 2020

1           THE COURT:  All right.  Is there any objection,

2  Mr. Taheb, to him playing the video?

3           THE DEFENDANT:  No.

4           THE COURT:  All right.  No objection.

5           MR. BUCHANAN:  Your Honor, this is a video that was

6  recovered from Mr. Taheb's computer after his arrest.

7           Prior to his arrest, he discussed making this video

8  with the FBI undercover agent and with the undercover

9  confidential human source.

10          THE COURT:  Wait one second.  Lynn, I don't have this

11  on my screen for some reason.

12          Maybe the screen is not on, but ...

13          There it is.  I got it.

14          All right, you can go ahead.

15     (Video was played.)

16          MR. BUCHANAN:  Your Honor, based on Government's

17  Exhibit 12, which we would move into evidence, the United

18  States requests the Court find based on a preponderance of

19  that evidence, that the terrorism enhancement applies, that

20  Mr. Taheb's actions were designed to promote terrorism,

21  specifically 18 U.S.C. 844(f)2, and/or 18 U.S.C. Section 8443.

22     Your Honor, the video we just watched shows Mr. Taheb

23  meant his actions in a symbolic way.  He meant them to

24  influence the United States government.  It was a message to

25  the American people, to the American president, to American

1  allies, and then to Muslims in the West and beyond.

2      The video mentions American's influence and activity

3  outside of the United States.  He asks Muslims why don't they

4  fight?  He talks about, he says until you withdraw your

5  troops, Americans will not see peace until Muslim lands see

6  peace.  And he says that we are men who love death more than

7  you love life.

8      Also, your Honor, I would point to paragraph 33 of the

9  presentence report.  Mr. Taheb submitted a statement to U.S.

10  Probation that says he did intend to carry out a martyrdom

11  operation of Jihad against America.  He knows his primary

12  target was the White House due to it being a symbol of

13  oppression.

14      Your Honor, based on this evidence we believe that the

15  preponderance standard is met and Mr. Taheb's actions were

16  committed to promote an act of terrorism, and we would ask the

17  Court to apply the terrorism enhancement.

18          THE COURT:  All right.  Thank you.

19          Mr. Taheb, just to confirm, you have no objection to

20  the admission of Exhibit 1, correct?

21          THE DEFENDANT:  That's correct.

22          THE COURT:  All right.  So Government's Exhibit 1 is

23  admitted without objection.

24          Anything else you want to say about this matter?

25          THE DEFENDANT:  Again, I do not object.

1              THE COURT:  All right.  Thank you.

2              For the record, Mr. Taheb withdrew his objection to

3    the three paragraphs that I had mentioned, but for the record,

4    I will state that even if the objection had remained, I would

5    have overruled it based on the precedent of the Eleventh

6    Circuit in the case of United States vs. Mandhai, 335 F.3d

7    1243.  This is a 2004 case from the Eleventh Circuit.

8              And in that case, there was a similar argument that

9    because the defendant in Mandhai was convicted of a crime that

10   was not on the list as a federal terrorism crime, that it

11   should not be used for the enhancement in the sentencing

12   guidelines.

13             The Eleventh Circuit rejected that argument, said

14   that had the guideline drafters intended that Section 3A1.4

15   apply only where the defendant is convicted of a crime listed

16   in that list of federal terrorism crimes, they would have

17   included such limiting languages.  But instead they

18   unambiguously cast a broader net by applying the enhancement

19   to any offense that involved or was intended to promote a

20   terrorism crime.

21             So the question then becomes whether the particular

22   offense for which the defendant actually pled or was

23   convicted, whether the circumstances in fact surrounding that

24   offense constituted, as I just said, an intent to promote a

25   terrorism crime.

1        And the Court would find, if the objection had been

2   maintained, that that was the case.  The undisputed evidence

3   that is present in the presentence report, specifically

4   paragraphs 13, which indicated that the defendant brought

5   hand-drawn stretches of the White House to a meeting with the

6   undercover individuals in this case, indicating that the

7   attacks would include semi automatic weapons, explosive

8   devices, hand grenades and the target was, among other places,

9   the White House.

10        And in paragraph 24, the defendant again discussed

11   his attack plan against the White House, including that the

12   attack was to be conducted and to take down as many people as

13   possible and to proceed to cause death or injury to as many

14   people until he and his group either died, emptied all their

15   ammunition, or was captured.

16        Paragraph 27, which the defendant advised the

17   confidential individuals who were involved in the

18   conversations that his attack included the use of explosives.

19   And paragraph 28 indicated that the plan was to get as many

20   people as possible and to do the most damage, specifically

21   noting the areas where the Secret Service and Homeland

22   Security operated within the White House.

23        Paragraph 29 talks about sketches of the floor plans

24   of the White House, with the Secret Service and Homeland

25   Security areas noted with stars.

1          Paragraph 30 talks about the exchanging, the plan to

2   exchange vehicles for explosive devices as well as semi

3   assault rifles, and the explosive devices would have remote

4   detonation capabilities.

5          All of those undisputed facts show that there was

6   certainly an intent to promote a crime defined as an act of

7   terrorism under 18 U.S.C. Section 2332b(5)(B), and

8   specifically the one that talks about 18 United States Code

9   Section 844(f)(2), which says engaging in conduct prohibited

10  by the subsection, and as a result of such conduct creates a

11  substantial risk of injury to any person, including any public

12  safety officer performing duties.

13         And what I just read from the presentence report

14  would support that.

15         So the short story of a long explanation is if the

16  objection were maintained, the Court would still overrule it.

17         All right.  Any further objections, Mr. Taheb, with

18  respect to the presentence report?

19              THE DEFENDANT:  Excuse me.  Yes.

20              MS. JOHNSON:  Yes, your Honor.  There were is -- and

21  this is something that I brought up in the letter.  We are

22  asking the Court to have the probation officer delete certain

23  sentences to the final sentence before that is going to B.O.P.

24         And the reason for that is when he was being

25  interviewed, Mr. Taheb chose to exercise his right to remain

1 silent and not answer any questions as to certain topics.

2          That is in the presentence report by the simple words

3 "he refused," "he did not cooperate," and these are negative

4 connotations that are not fair to Mr. Taheb, given his rights.

5          So for that reason, we are asking the Court to have

6 probation delete certain sentences that contain those words.

7          I have provided the deputy clerk a list of the

8 paragraphs involved and the list of the sentences that we

9 would like to be deleted.

10          I believe the government does not have an objection

11 to this request.

12          THE COURT:  All right.  Is that true, Mr. Buchanan?

13          MR. BUCHANAN:  It is, your Honor.

14          THE COURT:  All right.  So the ones that you provided

15 to me are, just to confirm, paragraph 54, which is the second

16 and third sentences of the paragraph which talk about, let's

17 see -- okay.  The second and third sentences of the paragraph.

18 That's clear.

19          Paragraph 58, which is the first line of the

20 paragraph until the world "however."

21          Paragraph 61, the second sentence of the paragraph.

22          Paragraph 62, the last sentence of the paragraph.

23          Paragraph 70, the entire paragraph.

24          And paragraph 73, the entire paragraph.

25          Is that correct?

1          MS. JOHNSON:  That is correct, your Honor.

2          THE COURT:  All right.  And no objection from the

3   government, correct?

4          MR. BUCHANAN:  That's correct, Judge.

5          THE COURT:  All right.  I'll sustain then the

6   defendant's objection and order that the provisions in the

7   paragraphs that I just stated, without objection from the

8   government, be deleted in the PSR.

9          All right.  Any further objections, Mr. Taheb?

10          THE DEFENDANT:  No.

11          THE COURT:  All right.

12          All right.  Therefore, I'm going to adopt the

13   findings of fact and conclusions of law in the presentence

14   report as to which no objections have been made.

15          My guideline calculations are as follows, using the

16   2018 edition of the guidelines manual.

17          As set forth in paragraph 35 of the presentence

18   report, the applicable section in the guidelines manual for a

19   violation of 18 United States Code Section 844(f) is Section

20   2k1.4 of the guidelines.

21          And the appropriate base offense level is 24 based on

22   Section 2k1.4(a)(1)(B) if the offense involved the destruction

23   or attempted destruction of a dwelling, vehicle, maritime

24   facility, a vessel or a vessel's cargo, a public

25   transportation system, a state or government facility, or a

1   place of public use.

2          In this case, the defendant followed through with

3   plans to obtain weapons to cause destruction to the White

4   House, the Washington Monument, the Lincoln Memorial and other

5   public areas located in Washington, D.C., and to cause death

6   and injury to the occupants of those facilities.

7          With respect to victim related adjustments as set

8   forth in paragraph 37 of the presentence report, in accordance

9   with Section 3A1.4(a) of the guidelines, the base offense

10  level is increased by 12 levels if the offense was a felony or

11  was intended to promote a federal crime of terrorism.

12         In this case the defendant undertook specific actions

13  with the intent to destroy government structures and to cause

14  death or serious bodily injuries to persons within those

15  structures.

16         There are no objections to role in the offense.

17  There are no objections for obstruction of justice, therefore

18  the adjusted offense level is 36.

19         As set forth in paragraph 42 of the presentence

20  report, the defendant receives a three level downward

21  adjustment for acceptance of responsibility.

22         That results in a total offense level of 33.

23         There is a binding plea agreement in this case.  In

24  accordance with Rule 11(c)(1)(c) of the Federal Rules of

25  Criminal Procedure, although not binding on the Court, the

1  government and the defendant agreed that a specific sentence

2  is the appropriate disposition of this case, which is 180

3  months in custody.

4          With respect to the defendant's criminal history, he

5  has no prior criminal history, therefore his criminal history

6  score is zero.

7          However, as stated in paragraph 48 of the presentence

8  report, in accordance with Section 3A1.4(b) of the guidelines,

9  the instant offense is a felony which involved or was intended

10  to promote a federal crime of terrorism.  Therefore the

11  defendant's criminal history category becomes Category VI.

12          As set forth in paragraphs 77 to 81, the defendant

13  has no monthly income, no assets, and he has been incarcerated

14  since his arrest.  Therefore he's not able to pay any fine

15  within the guideline range either now or during any period of

16  supervised release.

17          The sentencing options are as follows:  The statutory

18  penalty is a term of imprisonment from 5 to 20 years, and a

19  fine of up to $250,000.  There is a five-year mandatory

20  minimum prison sentence.

21          With a total offense level of 33, and a criminal

22  history category of VI, the custody guideline range is 235 to

23  293 months.  As I have stated, we have a binding plea

24  agreement for 180 months.

25          The fine guideline range is $35,000 to $350,000.

1  There is no restitution in this case.  There's a special

2  assessment of $100.

3       The Court could impose the cost of confinement of

4  $37,448 annually or a cost of supervision of $4,472 annually,

5  or both.

6       There's no probation option, there's a potential term

7  of supervised release of up to three years, and the defendant

8  is a citizen of United States.

9       Is there any objection to the guideline calculations

10  as stated by the Court, on behalf of the government?

11       MR. BUCHANAN:  None on behalf of the government, your

12  Honor.

13       THE COURT:  Any objections to the guideline

14  calculations as stated by the Court, on behalf of the

15  defendant?

16       THE DEFENDANT:  No.

17       THE COURT:  All right.  I'll hear from both the

18  government and the defendant regarding what a fair and

19  reasonable sentence would be in this case considering the

20  3553(a) factors and recognizing the blinding plea agreement in

21  this case.  Mr. Buchanan.

22       MR. BUCHANAN:  Your Honor, Mr. Taheb and the United

23  States negotiated a sentence of 180 months in a plea agreement

24  that we have submitted to the Court.

25       As the Court noted, this sentence is below the

1   guideline range.  We have taken into account the 3553(a)

2   factors.  We note Mr. Taheb has very little criminal history,

3   but his offense was a serious.  Despite having no criminal

4   history, he set in motion a plan that had the potential to

5   injure or kill multiple people.

6          Mr. Taheb concocted this plan, as the PSR notes.  He

7   drafted sketches of the White House.  And as the Court just

8   pointed out, he specifically pointed out the places where

9   people would be.  In essence he pointed out the places where

10  the injury would be the most severe.

11         So it is certainly a serious offense that requires a

12  serious sentence, and we believe that a sentence of 180 months

13  accurately reflects Mr. Taheb's activity.

14         I also believe the sentence of 180 months would also

15  provide deterrence.  Not just for Mr. Taheb, but as the Court

16  saw in the video, this offense was designed to have a broader

17  impact.

18         So we believe that a sentence of 180 months has the

19  deterrent effect for those who would commit these types of

20  offenses in an effort to promote their ideology, particularly

21  when that ideology is accompanied by violence as it is here.

22         So we believe that one of the most important 3553(a)

23  factors for the Court to consider in fashioning this sentence

24  is that this sentence should have a deterrent effect.

25         Your Honor, those are the reasons the United States

1  recommends a sentence of 180 months as agreed upon by

2  Mr. Taheb in our binding plea agreement.

3         THE COURT:  All right.  Thank you.

4         Mr. Taheb, if you wish to say anything, you can say

5  it right from there.

6         If you wish to have your stand-by counsel speak, you

7  can do that as well.

8         MS. JOHNSON:  Your Honor, Mr. Taheb would like to

9  address the Court with allocution, and then I will address the

10 3553(a) factors.

11        THE COURT:  All right.  And let me tell you Mr. Taheb

12 what Ms. Johnson is talking about.

13        You have the right of allocution, which is the right

14 to make a statement on your behalf.

15        You don't have to make a statement, that's up to you.

16 You can also just rely on what Ms. Johnson would tell the

17 Court in terms of any argument she would have.

18        Do you wish to make a statement?

19        THE DEFENDANT:  Yes.

20        THE COURT:  All right.  You can go ahead.

21        Try to move the microphone as close to you as you

22 can.

23        THE DEFENDANT:  (Indiscernible.)

24        I am proud of my (indiscernible) it is on which and

25 in the heart of this war on terror appears exactly what I was

1  trying to prevent.

2          The fact that someone was born and raised in America,

3  with a loving family, who had every opportunity to make a

4  living for himself willingly volunteers upon the path of Jihad

5  shows that no matter what the U.S. tries, they cannot stop

6  (indiscernible).

7          Moreover, the establishment of the city of love is

8  negligible.

9          And imprisonment is more beloved to me than anything

10  that America could possibly offer in exchange for my faith.

11          Especially since the U.S. is so persistent in their

12  oppression against (indiscernible).  The casualties of women

13  and children alone of Muslims is -- it ravages over -- excuse

14  me.

15          So we have (indiscernible) we have occupation

16  (indiscernible).  We have war against Afghanistan.  We have

17  sanctions in Iraq.

18          So all of these are justifications for Jihad.  And

19  despite the -- despite the accomplishments of the U.S., it's

20  very astounding to realize how ignorant people really are.  I

21  mean, just (indiscernible) the this courtroom.

22          You tell us to sit, we sit.  You tell us to rise, and

23  we rise.  In this land we do not guide others to be this

24  authority to letting (indiscernible) to the one who regulates

25  and governs.

1        You, Mr. Cohen, have no authority to be in your

2   position.  Neither do the rest of the leaders nor your

3   president.

4        Why is it that you are so willing to allow a racist,

5   who degrades woman, who endangers the wellbeing of your

6   children, who squanders the wealth of the nation, who is

7   consistently instigating and allowing tensions to rise on his

8   own people, why is it that you are so eager to allow people

9   like this to handle your affairs?

10        Why would you subject yourself to a system that

11   allows that kind of behavior?  The fact is that you, yourself,

12   are humiliated and you reduce yourself to be nothing more than

13   just machines.

14        So your work is (indiscernible) so how long you are

15   depriving yourself of your own humanity, losing all purpose of

16   your existence?

17        So on behalf of these terrorists, on behalf of the

18   Muslims, I present our message to the world.  There is no good

19   but Allah, so worship him.  If you do, then you will be safe.

20        However, if you choose otherwise, then understand,

21   understand that it is not a mere coincidence that the U.S. is

22   the nation leading COVID-19 cases, especially with a president

23   who actually thinks that it's an honor to have the most

24   infections.

25        Now there are cases of locus swarming above.  Pharaoh

1  and his people also ignored these warnings.  So you would be

2  supremely shortsighted to think that what occurred with him

3  would not occur with the likes of you.

4          (Indiscernible).

5          THE COURT:  All right.  Thank you, Mr. Taheb.

6          Ms. Johnson?

7          MS. JOHNSON:  Thank you, your Honor.

8          Mr. Taheb is not the first young man to be charged

9  with this offense.  He is not the first young man to have to

10 face the consequences of this action.

11         As you can see, he has pled guilty, as everyone has

12 noted, he has accepted responsibility.  He is very strong in

13 his beliefs, but he has pled guilty and accepted

14 responsibility for what he has done.

15         A sentence of 180 months is consistent with the

16 sentence that other young men in Mr. Taheb's position have

17 received.

18         And there's a couple of things that makes the

19 sentence a little bit harder for him.  One is, as you know

20 from the presentence report, he has a condition from birth, a

21 health condition that will not -- that will result in

22 incarceration being a bit more difficult for him.

23         The second thing is as a result of this crime, he

24 will not qualify for reduction under the First Step Act, which

25 allows prisoners to receive up to a year off if they complete

1 certain programs while in B.O.P. custody.

2          But the nature of this charge, the statute to which

3 he pled guilty will not allow him to benefit from that new

4 law.

5          Yet Mr. Taheb comes from a loving family.  He's a

6 brother, he's a son, and he is also young.  He was barely

7 legal drinking age when this happened.  We would ask the Court

8 to accept the sentence proposed by the parties, which is a

9 sentence of 180 months.

10          Thank you.

11          THE COURT:  Thank you, Ms. Johnson.

12          Anything further, on behalf of the government?

13          MR. BUCHANAN:  No, your Honor.

14          THE COURT:  All right.

15          In considering the entire record in this case, and

16 pursuant to the Sentencing Reform Act of 1984, it is the

17 judgment of the Court that the defendant, Hasher Jallal Taheb,

18 is hereby committed to the custody of federal Bureau of

19 Prisons, to be imprisoned for a total of 180 months in

20 accordance with the binding plea agreement in this case.

21          It is further ordered that the defendant pay to the

22 United States a special assessment of $100, which shall be due

23 immediately.

24          The Court finds that the defendant does not have the

25 ability to pay a fine or the cost of his incarceration.  The

1    Court will therefore waive the cost of incarceration and the

2    fine in this case.

3            Upon release from imprisonment, the defendant shall

4    be placed on supervised release for a term of three years.

5    The defendant shall report to the probation office in the

6    federal judicial district where he is authorized to reside

7    within 72 hours of the time that he is released from

8    imprisonment, unless the probation officer instructs him to

9    report to a different office or within a different timeframe.

10           The defendant shall comply with the mandatory

11   conditions of supervised release, which are not to commit

12   another federal, state or local crime; not to unlawfully

13   possess a controlled substance; to refrain from any unlawful

14   use of a controlled substance; to submit to one drug test

15   within 15 days of release of imprisonment, and at least two

16   periodic drug tests thereafter as determined by Court; and to

17   cooperate in the collection of DNA as directed by his

18   probation officer, if applicable.

19           As part of the supervised release, the defendant

20   shall also comply with the standard conditions of supervision

21   which establish basic expectations for his behavior while on

22   supervision and provides the tools needed by the probation

23   officer who keep informed, to report to the Court, and to

24   bring about improvements in the defendant's condition.

25           Standard conditions of supervision will be included

1  in the judgment of this case.

2          The Court is also going to pose the following special

3  conditions of supervision:

4          First, that the defendant submit his person,

5  property, home, residence, vehicles, papers, computers, or

6  other electronic communications or data storage devices to a

7  search conducted by the United States Probation office.  The

8  failure to submit to such a search could be grounds for

9  revocation of his supervised release.

10         The defendant shall warn any other occupants of the

11  premises that he resides in may be subject to searches

12  pursuant to this condition.

13         An officer may conduct a search in accordance with

14  this condition only when reasonable suspicion exists that

15  defendant violated a condition of his supervision and the

16  areas to be searched contain evidence of this violation.

17         Next, the defendant shall permit confiscation or

18  disposal of any material considered to be contraband or any

19  other item which may be deemed to have evidentiary value of

20  the violations of his supervised release.

21         Next, the defendant shall participate in a mental

22  health assessment and, if necessary, mental health treatment

23  program and follow the rules and regulations of that program.

24         That program may require that the defendant submit to

25  an evaluation or testing.

1          The probation officer, in consultation with the

2    treatment provider, shall supervise the defendant's

3    participation in the program.

4          And the defendant shall pay all or part of costs of

5    the program based on his ability to pay, unless otherwise

6    excused by the probation office.

7          And finally, the defendant shall participate in a

8    cognitive behavioral treatment program and follow the rules

9    and regulations of that program.  Once again, the programs may

10   include group sessions, and the defendant shall pay all or

11   part of the costs of that program based on his ability to pay,

12   unless otherwise excused by the probation office.

13         Let me briefly talked talk about the 3553 factors and

14   why I believe 180 month sentence is a fair and reasonable

15   sentence under the guidelines, even though it is a below

16   guideline sentence.

17         First, the nature and circumstances of the offense

18   and the history and characteristics of Mr. Taheb.

19         As I have already indicated and as has been discussed

20   in this case, this is a very serious offense.  The defendant

21   took action which, if he carried it out, would have resulted

22   not only in the destruction of property, but in the injury and

23   possibly death of one or more individuals.

24         Fortunately, it did not get that far.  But the fact

25   that it was planned and the fact that the defendant presented

1  such a plan and the ability to carry it out is a serious

2  offense.

3     I have also considered the history and

4  characteristics of Mr. Taheb.

5     He doesn't have a prior criminal history.  He is a

6  young man.  And while this is a serious offense and he is

7  going to be punished severely for it, I determined not to

8  impose a guideline sentence in this case which could have

9  resulted in a substantially greater sentence than what I am

10  proposing because I think it's sufficient in this case, given

11  his history and circumstances.

12     I have also considered the need for the sentence

13  imposed not only to reflect the seriousness of the offense,

14  but to afford adequate deterrence, both specific and general

15  deterrence.

16     It's deterrence not just for Mr. Taheb, but also for

17  anyone else out there that understands that if you're going to

18  proceed along these lines, there is a severe punishment at the

19  end of the road.

20     The defendant is going to serve a serious sentence

21  for this and anyone who is thinking about doing these

22  activities needs to know that they are facing a similar type

23  of sentence if they have the same circumstances of the

24  defendant.

25     I have also considered the need to protect the

1   public.  I have considered the kinds of sentences available,

2   the kinds of sentence and the range established for this

3   offense as set forth in the guidelines, any pertinent policy

4   statement and the need to avoid sentence disparity.

5         Given Mr. Taheb's age and prior lack of a criminal

6   history, I believe the sentence that was agreed to by the

7   parties in the plea agreement in this case is fair and

8   reasonable.

9         It meets the criteria of punishment, deterrence and

10  incapacitation, and is sufficient but not greater than

11  necessary to comply with the directives of Section 3553(a).

12        Does the government have any objections to the

13  findings of the Court, the guideline calculations of the

14  sentence, or the manner in which it has been pronounced?

15        MR. BUCHANAN:  No, your Honor.

16        THE COURT:  Does the defendant have any objection to

17  the findings of the Court, the guideline calculations of the

18  sentence, or the manner in which it has been pronounced?

19        MS. JOHNSON:  Yes, your Honor.  Our objection deals

20  with the condition of supervised release that requires a

21  mental health evaluation and treatment.

22        I would direct the Court to paragraph 67 of the

23  presentence report, which states that my client's mother

24  reported no history of mental health and no history of

25  treatment for mental health.  So no history of mental health

1  conditions.

2        She didn't know that he has some behavioral issues

3  when he was using marijuana.  But we would note that that is

4  related to the substance, and not his mental health condition.

5        And for those reasons we would object to that special

6  condition of supervised release.

7        There is one other thing that I would like to put on

8  the record.  It's unrelated to my objections.

9        And that is the government and the defense had some

10  discussions about a laptop and a phone being returned to

11  Mr. Taheb's family.  And the government has indicated that

12  they will return it as soon as the appeal time is over, which

13  is two weeks from now.

14        So I just wanted to put it on the record so that it's

15  clear that we expect those materials two weeks from today.

16        THE COURT:  All right.  Thank you very much.

17        Mr. Taheb, you can appeal your conviction if you

18  believe that your guilty plea was somehow unlawful or

19  involuntary, or if there is some fundamental defect in the

20  proceedings that was not waived by your guilty plea.

21        You also have the statutory right to appeal your

22  sentence under certain circumstances, particularly if you

23  think this sentence was contrary to law.

24        However, a defendant may waive those rights as part

25  of a plea agreement, and you have entered into a plea

1   agreement which, with very limited exceptions which I went

2   over with you during the plea hearing, waives most of your

3   rights to appeal the sentence itself.

4           Such waivers are generally enforceable, but if you

5   believe the waiver was somehow unenforceable, you can present

6   that theory to the court of appeals.

7           With few expectations, any notice of appeal must be

8   filed within 14 days of judgment being entered in your case.

9           If you are unable to pay the cost of your appeal, you

10  can apply for leave to appeal without payment of fees and, if

11  you ask the clerk of court to do so, they would file a notice

12  of appeal on your behalf.

13          If you have any further questions regarding your

14  right to appeal in this case, I know your stand-by counsel

15  Ms. Johnson will be happy to advise you further in this

16  matter.

17          Mr. Taheb, do you have any further questions about

18  anything the Court has said at today's sentencing hearing?

19          THE DEFENDANT:  No.

20          THE COURT:  All right.

21          Anything further, on behalf of the government?

22          MR. BUCHANAN:  No, your Honor.

23          THE COURT:  Anything further, on behalf of the

24  defendant?

25          MS. JOHNSON:  No, your Honor.

1          THE COURT:  All right.

2          Court stands in recess.

3

4

5     (Proceedings were adjourned at 2:52 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         REPORTER'S   CERTIFICATE

3

4

5          I, Judith M. Wolff, Certified Realtime Reporter and

6    Official Court Reporter for the United States District Court

7    for the Northern District of Georgia, with offices at Atlanta,

8    do hereby certify:

9          That I reported on the Stenograph machine the

10   proceedings held in open court on Thursday, July 23, 2020, in

11   the matter of USA vs. Hasher Jallal Taheb, Case No.

12   19-cr-00036-MHC;

13         That said proceedings in connection with the hearing

14   were reduced to typewritten form by me; and that the foregoing

15   transcript is a true and accurate record of the proceedings.

16         This the 26th day of October, 2020.

17

18

19

20                        _____

                          /s/ Judith M. Wolff, RPR, CRR
21                            Official Court Reporter

22

23

24

25